Charity LEHNERT, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 08SC961.

Supreme Court of Colorado, En Banc.

Dec. 13, 2010.

Reppucci Law Firm, P.C., Jonathan D. Reppucci, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this second appeal, we review the court of appeals' decision that affirmed the crime-of-violence mandatory sentence imposed in this case, when the jury verdict failed to contain the specific finding of fact mandated by section 18–1.3–406, C.R.S. (2010), contrary to the trial court's instructions. *People v. Lehnert* (*Lehnert III* ), No. 02CA2186, slip op. at 5–6, 2008 WL 2374366 (Colo.App. June 12, 2008) (not selected for official publication). Charity Lehnert was convicted of attempted first degree murder and sentenced to thirty years based on the jury's finding that she committed a crime of violence, as was described in the verdict. For the relevant crime-of-violence mandatory sentence statute to apply, the jury "*shall* make a *specific finding* as to whether the accused ... possessed *and* threatened to use, a deadly weapon" during the eligible crime. § 18–1.3–406(4) (emphasis added). While the jury instruction contained the correct statutory definition, and directed the jury to answer whether the defendant possessed *and* threatened to use a deadly weapon, the verdict form did not. The jury verdict stated: "dur-

ing the commission of the offense, the defendant [did] possess *or* threaten the use of a deadly weapon." (emphasis added).

The court of appeals upheld the crime-of-violence mandatory sentence. It concluded that there was "no reasonable possibility" that the mistake in the verdict form that the trial court sent to the jury affected the jury's verdict. *Lehnert III*, No. 02CA2186 at 5. Therefore, it held that, while plain error review applies, under either a plain error or harmless error review, the sentence was valid. *Id.* at 5–6. We reverse.

Like the court of appeals, we apply plain error review because the defendant failed to object at trial and because of the inconsistency between the jury instruction and the jury's verdict. The crime-of-violence statute commands that the jury "shall" make a "specific finding" that the defendant both possessed *and* threatened the use of a deadly weapon in order to impose the crime-of-violence mandatory sentence. According to the language of the statute, the jury must make the required, specific finding of fact, and once it does, the defendant shall be sentenced within the increased penalty range. By negative implication, the increased sentencing range may not be imposed upon a defendant if the jury does not make the required, specific finding of fact.

■ When the trial court properly instructs the jury regarding the required, specific finding of fact, but the verdict form fails to contain the mandatory language, the jury's resulting finding is inconclusive and inconsistent; therefore, we hold that this incongruity constitutes trial error. We apply plain error review when a defendant fails to object contemporaneously to a trial error, as happened in this case, to determine whether the error warrants reversal. Under this standard, the defendant must demonstrate that the error affected a substantial right and that the record reveals a reasonable possibility it contributed to her conviction.

Applying plain error here, the tension between the correct jury instruction and the incorrect verdict is particularly important given the facts in this case. The defendant possessed explosive or incendiary parts. The parties contested at trial whether these parts could constitute possession of a deadly weapon. Even if we assume that the jury found that the defendant threatened the use of a deadly weapon, there is still a reasonable possibility it did not unanimously believe she possessed one. This error affected the defendant's substantial rights by increasing her sentence beyond the presumptive range. Hence, while the court of appeals correctly determined that plain error review applies, we hold that it incorrectly applied that standard in this case. Therefore, we vacate the defendant's crime-of-violence mandatory sentence and remand this case to the court of appeals to be returned to the trial court for resentencing the defendant on the crime of attempted first degree murder.

## II. Facts and Procedural Background

Charity Lehnert was charged with attempted first degree murder and with possession of explosive or incendiary parts, and the prosecution sought a crime-of-violence mandatory sentence to increase her sentence on the attempted first degree murder count, pursuant to section 18–1.3–406.[1]

Evidence at the defendant's trial showed that she had explosive parts that were capable of being assembled to make a pipe bomb, although they were not yet put together. During a search of the defendant's apartment, the bomb unit of the Denver Police Department found, among other things, two metal pipes (that were "scored," meaning they had been weakened to increase fragmentation), two metal-end caps with drilled out center holes, two boxes of shotgun shells, two flashlight bulbs, doorbell wire, latex gloves, electrical tape, a 9–volt battery, and magnets. Gunpowder could operate as an explosive in a pipe bomb if it is retrieved

---

1. At the time she was charged, the statute was numbered section 16–11–309, C.R.S (2001), although the relevant language is identical.

83**

from shotgun shells, but the shotgun shells had not been altered in any way. Likewise, broken flashlight bulbs could act to ignite an explosion, but the flashlight bulbs were not broken. Additionally, the police did not find a completed switch. When the police removed these items from the defendant's apartment, they did not need to take any safety precautions to prevent the items from detonating because they were not assembled.

The prosecution also presented evidence that the defendant intended to kill two correctional officers. On more than one occasion, the defendant told a friend that she intended to kill "two pigs" with a pipe bomb. There was also evidence that the defendant knew where one of these officers lived, had driven by his house more than once, and knew the car his family drove.

The trial court found that there was no evidence to support a conviction for possession of an explosive or incendiary "device," and it struck that definition from the instructions and verdict form. The jury convicted the defendant for possessing explosive or incendiary parts.

As to the crime-of-violence mandatory sentence statute, defense counsel argued that the defendant did not possess a deadly weapon because she did not have an incendiary device. In closing, defense counsel argued:

> There's no deadly weapon. She is not even charged with possessing an incendiary device or explosive device, she is charged with parts. She is not charged with attempt to possess an incendiary device because there's only mere preparation. There's no substantial step to even make an explosive device.

The trial court used the correct statutory definition when instructing the jury on the crime-of-violence mandatory sentence: "Did the defendant possess *and* threaten the use of a deadly weapon during the commission of Attempt [sic] First Degree Murder?" (emphasis added). However, the jury verdict

form that the trial court submitted to the jury stated: "during the commission of the offense, the defendant [did] possess *or* threaten the use of a deadly weapon." (emphasis added).

The jury convicted the defendant of both substantive counts and found that during the commission of the attempted first degree murder the defendant did "possess *or* threaten the use of a deadly weapon." (emphasis added). The trial court sentenced the defendant to thirty years based on the crime-of-violence mandatory sentence statute for the attempted first degree murder conviction and to a six-year concurrent sentence for the possession of explosive or incendiary parts conviction.[2] The defendant did not object at trial or at sentencing regarding the jury's failure to make the specific finding of fact necessary to sentence the defendant under the crime-of-violence mandatory sentence statute.

The defendant appealed, and the court of appeals reversed her attempted first degree murder conviction, holding that there was insufficient evidence to show that she took a substantial step toward the completion of the first degree murder. *People v. Lehnert* (*Lehnert I*), 131 P.3d 1104, 1108 (Colo.App. 2005). This court reversed in *People v. Lehnert* (*Lehnert II*), holding that there was sufficient evidence at trial for the jury to conclude that the defendant took a substantial step. 163 P.3d 1111, 1112 (Colo.2007). We remanded "for consideration of any remaining issues," *id.* at 1116, whereupon the defendant argued for the first time to the court of appeals that the verdict on the crime-of-violence mandatory sentence statute was deficient as a matter of law.

The court of appeals held that the standard of review for the trial court's imposition of the crime-of-violence mandatory sentence, in the absence of the correct verdict form, is plain error because the defendant did not object to the verdict at trial. *Lehnert III*, No. 02CA2186 at 4 (citing *Moore v. People*,

. The presumptive range for attempted first degree murder is eight to twenty-four years. § 18–2–101(4); § 18–1.3–401(1)(a)(V)(A), C.R.S. (2010).

925 P.2d 264, 268–69 (Colo.1996); *People v. Dunlap*, 124 P.3d 780, 793 (Colo.App.2004)). It concluded that there was "no reasonable possibility the difference in the verdict form affected the verdict," under either a plain error or harmless error standard of review because there was "undisputed" evidence that the "defendant told a friend she intended to kill two persons with pipe bombs" and because this court "concluded as a matter of law that defendant possessed an explosive device."[3] *Id.* at 5–6. In other words, even though the wording of the verdict form was contrary to the statute and the trial court's jury instruction, this did not affect the jury's finding of fact. Therefore, the court of appeals affirmed the crime-of-violence mandatory sentence. *Id.* Furthermore, the court of appeals held that there was sufficient evidence to support a finding that the defendant possessed a deadly weapon, as defined by section 18–1–901(3)(e), C.R.S.2010. *Id.* at 8.

We granted the defendant's petition for certiorari to consider whether the court of appeals erred in upholding the defendant's sentence based on the crime-of-violence mandatory sentence statute.[4] We now reverse.

### III. Discussion

■ We agree with both parties and the court of appeals that the plain error standard of review applies.

The prosecution argues that the crime-of-violence mandatory sentence is valid under a plain error standard of review. The prosecution cites to *People v. Martin*, 851 P.2d 186, 188 (Colo.App.1992) for the proposition that a jury "verdict is to be reasonably construed in light of the issues submitted to the jury and the instructions of the court" and that a verdict is "not void for ambiguity or incompleteness if the jury's intended meaning can be ascertained by reference to the record." In other words, the prosecution maintains that the defendant's sentence is proper because the jury's intended finding—that she possessed and threatened the use of a deadly weapon—is evident from the arguments presented at trial and the jury's ultimate conviction of the defendant for attempted first degree murder.

The defendant contends that her sentence should be reversed under plain error review because, based on the record, a reasonable jury could conclude that the defendant threatened a deadly weapon but never actually possessed one and because the sentence is contrary to the crime-of-violence statute.[5]

### A. Standard of Review

■ First we must determine the correct standard of review under which to evaluate the trial court's imposition of a crime-of-violence mandatory sentence here, where the difference between the correct jury instruction and the incorrectly worded verdict form results in an ambiguity as to whether the jury made the statutorily required finding of fact. Trial errors are those that occur "in the trial process itself." *People v. Vigil*, 127 P.3d 916, 929 (Colo.2006) (quoting *People v. Miller*, 113 P.3d 743, 749 (Colo.2005)). We apply plain error review to a trial error when the defendant fails to raise a contemporaneous objection. *Id.; see also* Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). For example, we have applied plain error review

---

3. It is worth noting that this court never held as a matter of law that the defendant possessed an "explosive device." On the contrary, as already noted, the trial court found that there was no evidence to support a conviction for possession of an explosive or incendiary "device," and it struck that definition from the jury instructions and verdict form.

4. We granted certiorari on the following issue: "Whether the thirty-year enhanced and aggravated range sentence imposed pursuant to section 18–1.3–406, C.R.S. (2008) for Petitioner's attempted murder conviction is illegal."

5. Because we reverse on other grounds, we find it unnecessary to consider the defendant's constitutional arguments that the sentence violates the defendant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article II, sections 16 and 25 of the Colorado Constitution.

to an erroneous jury instruction, *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001), and to omissions or misdescriptions of elements in jury instructions, *Griego v. People*, 19 P.3d 1, 8 (Colo.2001) (following *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).

Our court of appeals has applied plain error review in a similar case, where a trial court correctly instructed the jury on the statutory definition of a crime, but submitted verdict forms to the jury with language contrary to the statute. *People v. Woellhaf*, 87 P.3d 142, 150 (Colo.App.2003), *rev'd on other grounds*, 105 P.3d 209 (Colo.2005). There, the court of appeals found plain error where the trial court correctly instructed the jury that the pattern of abuse enhancement, for the crime of sexual assault on a child, requires two or more "incidents" of sexual contact, but the verdict forms only required the jury to find two or more "acts" of sexual contact. *Id.* The court reversed the pattern of abuse enhancements because it had "no way of knowing how many incidents of sexual contact the jury found to have occurred." *Id.*

■ Plain error is one that is "obvious and substantial and so undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Kaufman v. People*, 202 P.3d 542, 549 (Colo.2009) (quoting *People v. Weinreich*, 119 P.3d 1073, 1078 (Colo.2005)); *see also United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (stating that " '[p]lain' is synonymous with 'clear' or, equivalently, 'obvious' "). Under this standard, the defendant must demonstrate that the error complained of affected a substantial right and that the record reveals a reasonable possibility that the error contributed to her conviction. *Miller*, 113 P.3d at 750. We have stated that an erroneous jury instruction "does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt." *Id.* (citations omitted).

■ In contrast to plain error, we apply a harmless error standard of review to trial errors when the defendant objects at trial. *Vigil*, 127 P.3d at 929. At the opposite end of the spectrum are structural errors. Structural errors are those so basic to a fair trial they affect "the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (opinion of Rehnquist, C.J., for the Court). As a result, structural error can never be harmless. *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (constitutionally deficient reasonable-doubt instruction is structural error); *see also Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (trial by a biased judge).

With this framework in mind, we turn to the statute at issue in this case.

### B. Crime of Violence Statute

■ Section 18–1.3–406 is a mandatory sentencing provision. It is not a substantive charge and may only be imposed after the defendant has been found guilty of one of the eligible substantive offenses. *See, e.g., People v. Rodriguez*, 914 P.2d 230, 277 (Colo. 1996); *Brown v. Dist. Court*, 194 Colo. 45, 47, 569 P.2d 1390, 1391 (1977). This statute sets an increased penalty range for certain crimes that involve the use of a deadly weapon. *People v. Terry*, 791 P.2d 374, 378 (Colo. 1990). If the jury makes the specific finding as required in section 18–1.3–406(4), then the defendant must be sentenced to a term of at least the midpoint in, but no more than twice the maximum of, the presumptive range for the offense. § 18–1.3–406(1)(a).

In order to impose the crime-of-violence mandatory sentence for attempted first degree murder, the jury *shall* make a specific finding that the defendant used or possessed *and* threatened the use of a deadly weapon during its commission. The relevant statute reads:

(2)(a)(I) "Crime of violence" means any of the crimes specified in subparagraph

(II) of this paragraph (a) committed, conspired to be committed, or attempted to be committed by a person during which, or in the immediate flight therefrom, the person:

(A) Used, or possessed *and* threatened the use of, a deadly weapon . . .

(II) Subparagraph (I) of this paragraph (a) applies to the following crimes . . .

(A) Murder . . .

(4) The jury . . . *shall make a specific finding* as to whether the accused did or did not use, or possessed *and* threatened to use, a deadly weapon during the commission of such crime. . . . *If the jury . . . finds that the accused used, or possessed and threatened the use of,* such deadly weapon . . . the penalty provisions of this section shall be applicable.

§ 18–1.3–406 (emphasis added).

■ A deadly weapon may be any "weapon, device, instrument, material, or substance" which "in the manner it is used or intended to be used is *capable* of producing death or serious bodily injury." § 18–1–901(3)(e) (emphasis added). Whether an object is a deadly weapon is a question of fact for the jury to decide. *J.D.C. v. Dist. Court,* 910 P.2d 684, 688 (Colo.1996).

■ Our primary goal in construing a sentencing statute is to give effect to the legislative intent. *Vensor v. People,* 151 P.3d 1274, 1275 (Colo.2007). To determine legislative intent, we first look to the plain language of the statute. *See, e.g., Bostelman v. People,* 162 P.3d 686, 690 (Colo.2007).

The plain language of the crime-of-violence mandatory sentence statute indicates that the requirements set forth in section 18–1.3–

406(4) are mandatory. This statute dictates that the jury "*shall* make a *specific finding* as to whether the accused did or did not use, or possessed *and* threatened to use, a deadly weapon." § 18–1.3–406(4) (emphasis added).[6] The inclusion of the word "shall" means that the jury must make this specific finding in order to impose the crime-of-violence mandatory sentence. *See People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986) ("The generally accepted and familiar meanings of both 'shall' and 'require' indicate that these terms are mandatory."). When interpreting this statute we have previously held that it requires a "specific finding of fact," *Brown,* 194 Colo. at 47, 569 P.2d at 1391, and that the jury must make this determination beyond a reasonable doubt, *People v. Russo,* 713 P.2d 356, 364 (Colo.1986). The court of appeals has held that the trial court "must submit special interrogatories" to the jury to "elicit the required findings" and that failure to do so is reversible error. *People v. Grable,* 43 Colo. App. 518, 519, 611 P.2d 588, 589 (1979).

■ According to the mandatory language of the crime-of-violence statute, the jury must make the required, specific finding of fact, and once it does, the defendant shall be sentenced within the increased penalty range. By negative implication, the increased sentencing range may not be imposed upon a defendant if the jury does not make the required, specific finding of fact. A jury verdict that fails to track the statutory language, when combined with jury instructions that do track the statutory language, however, is not so egregious as to fall within the narrow category of structural errors, which require automatic reversal.[7] Rather, this situation is more analogous to a trial court's erroneous jury instruction, which we consider trial error. *Griego,* 19 P.3d at 8.

---

6. Because there was no evidence that the defendant used a pipe bomb, the prosecution only charged the defendant with "possessed and threatened the use of a deadly weapon."

7. We briefly note that *Medina v. People* is not controlling here. 163 P.3d 1136 (Colo.2007). In *Medina,* we held that it was structural error for the trial judge to sentence the defendant as a class 4 felony accessory even though the jury instructions listed the elements of the class 5 felony accessory and both parties operated at trial under the assumption that the defendant was charged with the class 5 felony. That situation is not present here, where the trial court sentenced Lehnert under the same provision to which she was charged and the jury was instructed.

Hence, when the trial court properly instructs the jury regarding the required, specific finding of fact, but the verdict form fails to contain the mandatory language, the jury's resulting finding is inconclusive and inconsistent; therefore, we hold that this incongruity constitutes trial error. This should be reviewed for plain error when the defendant fails to object at trial to determine whether the error warrants reversal.

## IV. Application

■ Applying plain error review, the trial court properly instructed the jury on the crime-of-violence mandatory sentence statute and the definition of a deadly weapon. The court asked the jury, "[d]id the defendant possess *and* threaten the use of a deadly weapon during the commission of Attempt First Degree Murder?" However, the verdict form contained language contrary to the statute, which prevented the jury from responding to the instruction, and the jury's resulting finding is ambiguous. The jury's verdict did not contain the required, specific finding of fact, but instead stated that during the commission of the attempted first degree murder the defendant did "possess or threaten the use of a deadly weapon." Because the defendant did not object at trial or at sentencing to the erroneous jury verdict, we review for plain error.

Turning first to whether there is a reasonable possibility that the error affected her sentence, the defendant concedes that a reasonable jury could conclude that she threatened to use a deadly weapon, but that she never actually possessed one. Even if we assume that the jury was unanimously convinced that she threatened the use of a deadly weapon, the record reveals a reasonable possibility that they did not unanimously find that she possessed one. Hence, we are not persuaded by the prosecution's argument that the jury's intended finding of possession can be ascertained by reference to the record.

The parties contested at trial whether the defendant possessed a deadly weapon, and

there was not overwhelming evidence of her guilt on this issue. The defendant had numerous parts needed to construct a pipe bomb, but she had not yet assembled them, she had not altered the shotgun shells to retrieve their gunpowder, she had not broken the flashlight bulbs to construct an igniter, nor had she acquired a switch to trigger the detonation. When the bomb squad removed the materials from the defendant's apartment, they did not need to take any safety precautions to prevent the parts from detonating. The trial court found that there was no evidence to support a conviction for possession of an explosive or incendiary device, and it struck that definition from the instructions and verdict form. The jury convicted the defendant for possessing explosive or incendiary parts. Finally, in closing, defense counsel argued that the defendant did not possess a deadly weapon because she did not have an incendiary device.

While the jury found that the defendant possessed explosive or incendiary parts, there is a reasonable possibility it did not unanimously find that these parts were *capable*, in their current state, of producing death or serious bodily injury. In other words, given this record, there is a reasonable possibility that the jury did not unanimously find that the defendant possessed a deadly weapon, and that the error in the verdict form affected the jury's verdict.

■ Finally, we conclude that this error affected the defendant's substantial rights. The trial court sentenced the defendant to thirty years for her attempted first degree murder conviction, based on the crime-of-violence mandatory sentence. This is six years above the presumptive range. Where the record presents a close call whether the jury would have made the required, specific finding of fact dictated by the crime-of-violence mandatory sentence statute, then imposing a crime-of-violence mandatory sentence contravenes the intent and command of the statute and violates the defendant's substantial rights.

## V. Conclusion

For the reasons stated above, we reverse the court of appeals' decision. We vacate the

thirty-year crime-of-violence mandatory sentence and remand this case to the court of appeals so that it may be returned to the trial court for resentencing the defendant on the crime of attempted first degree murder.

Justice MÁRQUEZ does not participate.